(No. 19986.—

THE CITY OF NAPERVILLE, Appellee, *vs.* XAVIER WEHRLE *et al.*—(THEODORE F. BOECKER, JR., *et al.* Appellants.)

*Opinion filed October 25, 1930.*

JOSEPH A. REUSS, (WORCESTER & LORD, of counsel,) for appellants.

WILLIAM R. FRIEDRICH, City Attorney, and LANG-WORTHY, STEVENS, McKEAG & McCORNACK, (BENJAMIN FRANKLIN LANGWORTHY, of counsel,) for appellee.

Mr. COMMISSIONER EDMUNDS reported this opinion:

On March 28, 1929, the city of Naperville filed its petition in the county court of DuPage county to levy a special assessment for a local improvement consisting of a connected system of sewers, with necessary appurtenances, in that portion of the city known as Naperville Heights, intercepting relief and outlet sewers in certain streets, and a sewage disposal plant. The petition also prayed that steps be taken to acquire by condemnation certain land and easements. On the same date the court appointed Truman I. Myers and Fred G. Orcutt as commissioners, to act with Herbert ·P. Thompson, president of the board of local improvements, in reporting compensation to be made to the owners of private property to be taken or damaged, together with real estate benefited and the amounts of benefits thereto, and to make and file an assessment roll, as required by law. By the order of appointment it was provided that Myers and Orcutt should receive a fee of $1320 each, to be taxed as costs. The oath of office of the commissioners was executed on March 29, 1929, and filed May 6, 1929. Theodore Boecker and others filed objections. On June 12, 1929, the court by agreement, without a jury, began the hearing of objections and taking proofs. On August 5, 1929, the court overruled all legal objections, and, finding that the property of objectors was not assessed more than it was benefited, entered judgment of confirmation against it. From this judgment the present appeal was taken by Boecker, Lawrence A. Schwartz, J. H. Clancy and George Reuss.

Appellants contend that Myers was not a competent and disinterested commissioner. If he was not, his participation infects the action of the whole body and makes it voidable. (*Rock Island and Alton Railroad Co.* v. *Lynch,* 23 Ill. 645; *State* v. *Crane,* 36 N. J. L. 394.) The statute provides that upon the filing of a petition praying that steps be taken to ascertain just compensation for private property to be taken for the purpose of a local improvement, the court shall enter an order "designating two competent persons as commissioners, to act with the superintendent of special assessments (where such officer is provided for by this act and in other cases the president of said board of local improvements) who shall investigate and report to the court the just compensation to be made to the respective owners of private property which shall be taken or damaged for the said improvement, and also what real estate will be benefited by such improvement, and the amount of such benefits to each parcel. Neither shall be employees of the petitioning municipality and both shall be disinterested persons. * * * Said three commissioners shall be duly sworn to make a true and just assessment of the cost of said improvement according to law." (Cahill's Stat. 1929, chap. 24, par. 136.) In view of the fact that lands of the school district were among those assessed, it is urged that Myers did not meet the qualifications thus prescribed, because at the time of his service as commissioner he was secretary of the Naperville board of education, receiving financial compensation for his services in such capacity.

To make assessments for improvements of this kind requires action of a judicial nature, (*State* v. *Crane, supra; City of Rochester* v. *Holden,* 224 N. Y. 386;) and it is the general rule, even apart from statute, that officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided. (*Tumey* v. *Ohio,* 273 U. S. 510; *Nettleton's Appeal,* 28 Conn. 268; *City of Grafton* v. *Holt,* 58 W. Va. 182; *Ex parte Corn-*

*well,* 144 Ala. 497; *Lindsay-Strathmore Irrigation District v. Superior Court,* 182 Cal. 315, 187 Pac. 1056.) In *County of Orange* v. *Storm King Stone Co.* 229 N. Y. 460, the court held that the words "disinterested" and "competent freeholders," as used in the New York highway and condemnation laws in prescribing qualifications for commissioners of appraisal in condemnation proceedings, mean a disinterestedness and a competency like that of a juror or judge. Long ago it was stated by this court that commissioners appointed to assess damages in eminent domain proceedings, (the statute requiring "competent and disinterested persons,") "are quasi-jurors, and should be, like them, *'omni exceptione majores.'*" (*Rock Island and Alton Railroad Co.* v. *Lynch, supra.*) In holding that an employee of the United States is not competent as a juror where defendant is on trial for conspiracy against the United States, the Supreme Court of the United States said, referring to a statute prescribing certain qualifications for jurors: "Jurors must at least have the qualifications mentioned in section 215, but that section does not, in our opinion, so far alter the common law upon the subject as to exclude its rule that one is not a competent juror in a case if he is master, servant, steward, counselor or attorney of either party. In such case a juror may be challenged for principal cause as an absolute disqualification of the juror. * * * Modern methods of doing business and modern complications resulting therefrom have not wrought any change in human nature itself, and therefore have not lessened or altered the general tendency among men, recognized by the common law, to look somewhat more favorably, though perhaps frequently unconsciously, upon the side of the person or corporation that employs them, rather than upon the other side. Bias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one (on account of his relations with one of the parties)

who was quite positive that he had no bias and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence. The law therefore most wisely says that with regard to some of the relations which may exist between the juror and one of the parties bias is implied and evidence of its actual existence need not be given." (*Crawford* v. *United States,* 212 U. S. 183.) Other cases illustrative of the same principle are *Ætna Ins. Co.* v. *Stevens,* 48 Ill. 31, *Hufnagle* v. *Delaware and Hudson Co.* 227 Pa. 476, 76 Atl. 205, *Pearce* v. *Quincy Mining Co.* 149 Mich. 112, 112 N. W. 739, *Block* v. *State,* 100 Ind. 357, *Stumm* v. *Hummel,* 39 Iowa, 478, *Central Railroad Co.* v. *Mitchell,* 63 Ga. 173, and *Hubbard* v. *Rutledge,* 57 Miss. 7.

That a commissioner whose duty it was to assess benefits against the property of the corporation of which he was an officer and from which he was receiving compensation was neither "competent" nor "disinterested" would seem too clear, in the light of the above principles, to require discussion. Appellee insists, however, that authority for the qualification of Myers is found in *People* v. *Mayor of Syracuse,* 63 N. Y. 291, where the fact that one of the commissioners was a trustee of a Presbyterian church which owned property assessed for the improvement was held not to disqualify him. The court there emphasized the remoteness of the commissioner's interest. However proper that decision may have been, in the absence of a more exact showing of the relationship between the religious organization and its trustees the case affords no sufficient precedent for holding that Myers was qualified under our statute.

Appellee cites, also, the cases of *Chesapeake and Ohio Canal Co.* v. *Binney,* 5 Fed. Cas. 561, *In the Matter of Opening Twenty-sixth Street,* 12 Wend. 203, and *County of Orange* v. *Storm King Stone Co. supra.* In the *Chesapeake and Ohio case,* involving an eminent domain proceeding in which a corporation was a party and where it was claimed that a juror was disqualified because he was a stock-

holder, the court concluded in so many words that the juror "was quite free from any interest whatever in the stock of the company at the time of taking the inquisition." In the *Twenty-sixth Street case,* where it was held that it was no objection to the confirmation of a report that one of the commissioners was elected and served as assistant alderman of the city after his appointment as commissioner, the court pointed out that the commissioner's interest in the city property was as great before as since his election, "and it is no other than the interest of every citizen of New York who contributes as much as Mr. Purdy does to the public burthens." The *County of Orange case* holds, among other things, that it is competent for the legislature to provide that a general tax-payer of a municipal corporation is not disqualified from being a juror, judge or commissioner in an action where the corporation is a party. Our legislature has already enacted measures of this kind. (Cahill's Stat. 1929, chap. 24, par. 241; ibid. chap. 34, par. 35.) No such point is presented here, where the interest involved is not the same as that of all other tax-payers but of a direct and immediate personal nature. The *County of Orange case* clearly recognizes such distinction, and in expressing doubt as to the power of the legislature to remove the disqualification of a direct and immediate interest, the court in that case certainly lends no support to appellee's position. Myers must be held disqualified for the reason above stated.

Inasmuch as the judgment must be reversed and the cause remanded, to the end that there may be an investigation as to appellants' property by commissioners whose qualifications meet the requirements prescribed by section 15 of the Local Improvement act, there is no occasion from the standpoint of the present appeal to consider the other errors assigned. However, it is possible that upon further proceedings below some of the same questions may arise again, and for that reason it is proper to refer to them in the present opinion.

Appellants contend that because Naperville is under the commission form of government no ordinance such as the one initiating the improvement here involved could go into effect before thirty days from the time of its final passage, and that, inasmuch as the petition for the improvement herein was filed only six days after the ordinance was passed, it was not based upon a valid ordinance. This contention is not well taken. The provision of the Commission Form of Government act that no ordinance passed by the council shall go into effect before thirty days from the time of its passage has no application to an ordinance for a local improvement. *Village of Crotty* v. *Domm,* 338 Ill. 228; *City of Dallas City* v. *Steingraber,* 321 id. 318.

Appellants contend that because Naperville was organized as a village in 1857 under a special charter, which gave it power to "purchase, receive and hold real and personal property within the limits of the village and no other (except for burial grounds)," it has no power to acquire land for a sewage disposal plant outside the city limits, as contemplated by the proceeding herein. This contention is without merit. In 1890 the village of Naperville adopted the general Cities and Villages act. By virtue of this action the city of Naperville became possessed of the powers granted under that act. (Cahill's Stat. 1929, chap. 24, par. 6.) Section 98 of the Local Improvement act provides that corporations having powers conferred by article 9 of the Cities and Villages act shall have the powers conferred by the Local Improvement act. (Cahill's Stat. 1929, chap. 24, par. 231.) Under these powers a city or village may extend an improvement beyond the village or city limits where necessary to carry out the scope and object of the improvement. *Village of Broadview* v. *Dianish,* 335 Ill. 299.

It is argued that the proposed improvement is general and not local. What is a local improvement is a question of law, but whether the facts in the particular case bring an improvement within the definition so that it may be re-

garded as a local improvement is a question of fact. (*City of Waukegan* v. *DeWolf*, 258 Ill. 374.) The plans and specifications for the system here involved are not to be found in the abstract, and it cannot be said, upon the basis of the evidence which is shown, that there is merit in this argument.

Appellants contend that the proposed improvement is double. This contention appears to have its principal basis upon the assumption that the proposed disposal plant is a general improvement. It is said that joining this disposal plant with a new sewer system certainly makes a double improvement. For the reason already suggested it cannot be said that the proposed improvement, or any part thereof, is general rather than local, and the evidence shown does not warrant us in acceding to this argument.

It is argued that no necessity exists for the proposed improvement, and that the ordinance is therefore unreasonable and void. Under the state of the evidence here shown this contention is without merit. *City of Carbondale* v. *Reith*, 316 Ill. 538.

The contention is made that there is a variance between the enacting clause of the ordinance and the remainder thereof. In view of the fact that portions of the ordinance are not abstracted we cannot undertake to pass upon this assignment.

The judgment of the county court is reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*